## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RINA M. WINN,
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.

Case No. 1:16-cv-570
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Rina Winn brings this pro se action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI").

This matter is before the Court on plaintiff's statement of errors (Doc. 9) and the

Commissioner's response in opposition (Doc. 16).

### I. Procedural Background

Plaintiff filed her application for SSI in October 2009, alleging disability since April 15,

2008 due to anxiety, depression, nerves, breathing problems, acid reflux, high blood pressure,

lower back problems, tendinitis, carpal tunnel syndrome, and hearing loss. Plaintiff's application

was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was

granted a *de novo* hearing before administrative law judge ("ALJ") George Gaffaney. Plaintiff

and a vocational expert ("VE") appeared and testified at the ALJ hearing. In January 2012, ALJ

Gaffaney issued a decision denying plaintiff's application. The Appeals Council granted

plaintiff's request for review in September 2013 and remanded the case. In January 2014,

plaintiff, her husband Joseph Winn, and a VE appeared and testified at a hearing before ALJ

Anne Shaughnessy. Plaintiff and the VE offered supplemental testimony before ALJ

Shaughnessy in September 2014. On October 21, 2014, ALJ Shaughnessy issued a decision

denying plaintiff's application. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Shaughnessy the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps

of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since October 21, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: obesity; asthma; carpal tunnel syndrome; diabetes; mild degenerative changes of the lumber spine with a pars defect of the L5 vertebrae; mild degenerative changes of the cervical spine; major depressive disorder; and anxiety disorder (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 416.967(b) except for the following limitations. The [plaintiff] cannot climb ladders, ropes, or scaffolds. The [plaintiff] can finger and handle frequently. The [plaintiff] should avoid even moderate exposure to pulmonary irritants, such as fumes, odors, and dusts. The [plaintiff] should avoid even moderate exposure to hazards, such as unprotected heights and moving machinery. The [plaintiff] can perform simple to moderately complex tasks in an environment that does not require fast pace or high production expectations. The [plaintiff] is capable of work involving only minimal and superficial interaction with the general public.
>
> 5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] 1973 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since October 21, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 27-46).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the representative unskilled jobs of hand bander (100,000 jobs nationally), label inspector (22,000 jobs nationally), and weigher (20,000 jobs nationally). (Tr. 46,69).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues the ALJ did not properly assess her mental functioning. (*See* Doc. 9 at 1-4). Plaintiff also argues the ALJ failed to properly evaluate the testimony of plaintiff's husband. (*See id.* at 3-4).[2] The Court will consider each of plaintiff's arguments in turn.

### 1. Substantial evidence supports the ALJ's assessment of plaintiff's mental functioning.

Plaintiff contends the ALJ's decision does not properly address her difficulty in being around and socializing with other people. (Doc. 9 at 1-2). Plaintiff also appears to take issue with the ALJ's finding that plaintiff plays video games several times a week. (*Id.* at 1). Plaintiff asserts that "she used to play the video games just not exactly multiple times like it's stated." (*Id.*). Plaintiff asserts that she stopped going to counseling at Shawnee Mental Health Center

---

[2] Plaintiff also notes errors in the psychological evaluation report of Stephen W. Halmi, Psy.D., including the years her mother was married, the ages of her brother and sister, and her jobs as an adolescent. (*See* Doc. 9 at 4-5). The Court finds that any errors in this information are not material to the ALJ's findings. Thus, to the extent that plaintiff is proposing these errors in Dr. Halmi's report as grounds for reversal, that assignment of error should be overruled.

("SMHC") because her counselor would not answer or return her calls and, thus, she was unable to schedule appointments. (*Id.* at 3). Citing hearing testimony that she loses concentration when reading or watching television, plaintiff argues the ALJ did not properly assess her ability to maintain concentration and focus. (*Id.* at 4) (citing Tr. 86).

Addressing plaintiff's mental health limitations in the RFC, the ALJ found that she "can perform simple to moderately complex tasks in an environment that does not require fast pace or high production expectations" and she "is capable of work involving only minimal and superficial interaction with the general public." (Tr. 31). In explaining plaintiff's limitations, the ALJ indicated that while plaintiff's early complaints in this case asserted difficulty in being around others, plaintiff "did not address such complaints at the January 2014 hearing." (Tr. 30). The ALJ noted that plaintiff "generally failed to identify any psychological complaints until directly questioned about such issues late in the hearing." (Tr. 35). The ALJ noted that plaintiff's initial mental status exam at SMHC in 2009 "recorded normal findings aside from noting [plaintiff] appeared somewhat depressed and anxious." (Tr. 40). Plaintiff stopped receiving counseling services in August 2011 and has only treated her mental health symptoms with Zoloft prescribed by her primary care physician at a dosage that has remained the same since October 2009. (Tr. 41). The ALJ observed that plaintiff's medical providers consistently documented normal findings on mental status examinations and some providers indicated that plaintiff "was able to follow directions, exhibited sufficient concentration, and presented with normal memory." (*Id.*). Noting plaintiff's January 2014 testimony that she experiences auditory hallucinations and schizophrenic symptoms, the ALJ determined there was no medical evidence in the record to support those claims. Further, as to plaintiff's allegations that she suffers from anxiety, depression, memory deficits, and concentration difficulties, the ALJ found that many of plaintiff's treatment notes indicate that she denied having these problems. The ALJ found only

6

one reference to a panic attack in plaintiff's "extensive mental health treatment records, which suggests these attacks are considerably less prevalent that [plaintiff] has reported." (*Id.*).

In formulating the mental RFC, the ALJ gave some weight to the opinion of consultative examiner Stephen Halmi, Psy.D. (Tr. 43). The ALJ noted that Dr. Halmi observed no manifest signs of anxiety and conducted cognitive function testing that showed plaintiff had adequate attention and concentration and fair memory. (Tr. 41). The ALJ also noted Dr. Halmi's observation that plaintiff "appeared to exaggerate the nature of her symptoms on both a pre-interview checklist and during the clinical interview." (*Id.*). The ALJ discounted plaintiff's allegations of social anxiety by citing evidence that plaintiff had regular contact with family members, maintained contact with a number of friends, traveled to Florida to visit her new nephew and numerous family members, and regularly attended flea markets and garage sales. (Tr. 42). The ALJ found that the record shows that plaintiff "engages in hobbies like poetry, drawing, video games, and card games, all of which indicate her concentration is greater than she has claimed." (*Id.*).

Substantial evidence supports the ALJ's assessment of plaintiff's mental health functioning. First, as to plaintiff's ability to interact with others, she testified at her administrative hearing in January 2014 that: "I don't really hang out with nobody. I don't have no friends or anything. I get nervous around a large group of people." (Tr. 108). The record shows that at her initial appointment at SMHC in October 2009, plaintiff reported that "[s]he gets nervous around a lot of people." (Tr. 675). At that time, plaintiff also reported playing card or other games with family and going to the flea market and garage sales. (Tr. 621). In November 2009, Dee Hendricks, plaintiff's counselor at SMHC, noted that she met with plaintiff to assist her with her disability application because she "has increased anxiety in social settings, and

increased paranoia." (Tr. 672). In January 2010, Ms. Hendricks indicated that plaintiff was close to her family and visited with family two to three times a week. (Tr. 497).

Plaintiff reported to Dr. Halmi in January 2010 that she "can't be around people" and isolates from others. (Tr. 501). Dr. Halmi noted that plaintiff "does not have a history of problems getting along with others in the community such as clerks, neighbors, or the general public." (*Id.*). Dr. Halmi also observed that plaintiff "does not have a history of problems getting along with coworkers or supervisors, but she prefers to work alone." (Tr. 502). Plaintiff reported that she spends time with her mother, aunt, and in-laws, but has no friends. (*Id.*). Plaintiff also reported having panic attacks when around a crowd of people. (Tr. 503). Dr. Halmi believed that plaintiff had "exaggerated symptomatology to some degree" and a "tendency to over endorse psychopathology." (Tr. 505). Based on the clinical interview, Dr. Halmi opined that plaintiff was moderately impaired in her ability to relate to others, including coworkers and supervisors. (Tr. 506-07). Dr. Halmi explained that a person with a moderate limitation in an area "is still able to function satisfactorily." (Tr. 506). In March 2010, state agency reviewing psychologist Suzanne Castro, Psy.D., opined that plaintiff was "[c]apable of work involving only minimal and superficial interaction with the general public." (Tr. 539).

Based on this evidence, plaintiff's argument that the ALJ did not properly address her difficulty in being around and socializing with other people is not well-taken. Even though the ALJ erroneously found that plaintiff did not address her alleged difficulty in being around others at the January 2014 hearing, the ALJ still addressed plaintiff's difficulties in interacting with others in formulating plaintiff's RFC. (*See* Tr. 30, 108). Specifically, the ALJ recognized this limitation and addressed it by limiting plaintiff to "work involving only minimal and superficial interaction with the general public." (Tr. 31). Substantial evidence supports the ALJ's decision not to further limit plaintiff's interactions with coworkers and supervisors as well. Specifically,

Dr. Halmi opined that plaintiff had only a moderate limitation in her ability to interact with coworkers and supervisors and, thus, was still able to function satisfactorily in that area. (Tr. 506-07). In reaching that conclusion, Dr. Halmi observed that while plaintiff preferred to work alone, she did not have a history of problems interacting with coworkers or supervisors. (Tr. 502).

Second, as to plaintiff's level of concentration, she asserts that she does not play video games as much as before and loses concentration when reading or watching television. (Doc. 9 at 1, 4). However, Dr. Halmi observed that plaintiff was "alert and oriented" and "maintained adequate attention and concentration to complete the evaluation." (Tr. 504). Nevertheless, Dr. Halmi noted that "[t]here was evidence of concentration problems based on her performance on the mental status examination." (Tr. 505). Based on the clinical interview and mental status examination, Dr. Halmi opined that plaintiff's ability to maintain attention and concentration to perform simple, repetitive tasks was moderately impaired by her depression and anxiety. (Tr. 506). Dr. Castro opined that plaintiff was able "to perform simple to moderately complex tasks in an environment that does not require fast pace or high production expectations." (Tr. 539).

Based on this evidence, plaintiff's argument that the ALJ did not properly assess her difficulties with concentration is not well-taken. Rather, the ALJ recognized and addressed plaintiff's moderate limitation in maintaining concentration by limiting her to the performance of "simple to moderately complex tasks in an environment that does not require fast pace or high production expectations." (Tr. 31). The opinions of Dr. Halmi and Dr. Castro constitute substantial evidence supporting the ALJ's assessment. (*See* Tr. 504, 506, 539).

Finally, plaintiff asserts that she stopped going to counseling at SMHC because her counselor would not answer or return her calls and, thus, she was unable to schedule appointments. (Doc. 9 at 3). Presumably, plaintiff makes this assertion to challenge the ALJ's

finding that she has not received "any counseling services since August 2011." However, the RFC limitations the ALJ assessed were supported by substantial evidence as explained above and did not rely on plaintiff's failure to attend counseling. Further, plaintiff has not provided any compelling evidence that would suggest more restrictive RFC limitations were warranted.

Based on the foregoing, plaintiff's assignment of error related to the ALJ's assessment of her mental functioning should be overruled.

> ### 2. Substantial evidence supports the ALJ's evaluation of the testimony of plaintiff's husband.

Plaintiff asserts that her husband, Joe Winn, did not describe her emotional and behavioral problems in his testimony at the January 2014 hearing because he feared that plaintiff would be committed to a psychiatric facility if the full extent of her mental health condition was known. (*See* Doc. 9 at 2). Plaintiff indicates that Mr. Winn now wishes to state that: (1) plaintiff "goes through the house busting things up and tearing . . . items up"; (2) he hides plaintiff's medication at times to prevent her from "taking too many"; and (3) he has stopped plaintiff from committing suicide. (*Id.*). Plaintiff also addresses the ALJ's finding that it was "quite remarkable that [plaintiff's] husband, who is reportedly receiving disability benefits because he is illiterate, handwrote a functional report on [plaintiff's] behalf." (*See* Tr. 45). Plaintiff indicates that because her husband is illiterate, someone else wrote down the statements in the functional report for him and he only signed it. (Doc. 9 at 3).

The following exchange occurred at the January 2014 hearing:

[Plaintiff's attorney]: Can you tell me what you've observed about her emotionally or mentally?

[Mr. Winn]: (Inaudible) I mean—

[Plaintiff's attorney]: Well, I mean, does she—does she sleep a lot?

[Mr. Winn]: She lays around a lot because she's complaining of her back hurting, her legs hurting. I can remember in the last year her going to bed mainly crying because her legs are hurting.

. . .

[Plaintiff's attorney]: Okay. Well, I don't have any other questions of this witness, your Honor.

(Tr. 120-21). The ALJ described this testimony as follows: "When asked about any emotional or behavioral problems, Mr. Joe Winn could not identify any such problems. He instead indicated that [plaintiff] lies around a lot throughout the day while complaining about her back and legs." (Tr. 35). This assessment of Mr. Winn's testimony concerning plaintiff's emotional and behavioral problems was accurate and reasonable. The statements of Mr. Winn that plaintiff now wishes to submit on his behalf are not part of the record before the ALJ and this Court "is confined [on appeal] to review evidence that was available to the [ALJ]." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Further, after Mr. Winn testified concerning plaintiff's back and leg pain, plaintiff's attorney could have asked additional questions concerning plaintiff's emotional and behavioral problems but chose not to do so. (*See* Tr. 121).

Because of the limited nature of the Court's review, Mr. Winn's statements that were not part of the record before the ALJ may only be considered on appeal if they are new and material. *See Wyatt*, 974 F.2d at 685. "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceedings." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (quoting *Sullivan v. Finkelstein*,

11

496 U.S. 617, 626 (1990)). "[E]vidence is 'material' only if there is 'a reasonable probability

that the Secretary would have reached a different disposition of the disability claim if presented

with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d

709. 711 (6th Cir. 1988)). "A claimant shows 'good cause' by demonstrating a reasonable

justification for the failure to acquire and present the evidence for inclusion in the hearing before

the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir.

1984)).

Beyond plaintiff's unsupported assertion that her husband was afraid to describe

plaintiff's mental health at the hearing for fear that she would be committed to a psychiatric

facility, plaintiff has provided no basis for finding this evidence to be "new." Plaintiff's husband

testified in January 2014. Plaintiff received a second hearing in September 2014 and the ALJ did

not issue a decision until October 2014. Plaintiff appealed the ALJ's decision to the Appeals

Council in November 2014 but did not raise the issue of her husband's testimony at that time.

(*See* Tr. 19, 464-68). In short, plaintiff had multiple opportunities to supplement the record

concerning her husband's testimony prior to filing her appeal to this Court, but she has provided

no compelling justification for her failure to do so. *See Staples v. Comm'r of Soc. Sec.*, 159 F.

App'x 670, 672 (6th Cir. 2005) (finding evidence submitted on appeal was not new because

plaintiff had two opportunities to supplement the record to include the evidence: "after the June

2001 hearing but before the ALJ's October 2002 decision, and when she sought review from the

Appeals Council in late 2002"). Therefore, this evidence was not new and does not justify a

remand for further proceedings.

As to plaintiff's assertion that "someone else" wrote the function report that her husband

signed, this evidence was also not before the ALJ. However, even if the Court could consider

this evidence on appeal, plaintiff has not explained how the fact that someone else wrote the

function report for her husband to sign compels a different result. The ALJ noted that her finding concerning Mr. Winn's ability to handwrite a function report although he was reportedly illiterate was "not entirely germane to the current discussion" of plaintiff's RFC, which suggests that this finding was not material to the ALJ's RFC determination. (*See* Tr. 45). In any event, even if the ALJ was mistaken in her belief that Mr. Winn handwrote the report himself, she still considered that function report and rejected it for entirely independent reasons that are supported by substantial evidence. Specifically, the ALJ rejected the limitations contained in the function report because it "offer[s] conclusory statements that vaguely allege [plaintiff] is severely limited without specific examples of functional limitations." (*Id.*). Further, the ALJ noted that the function report "instead recite[s] diagnoses or alleged symptoms, a number of which are not documented anywhere in [plaintiff's] treatment notes." (*Id.*).

Based on the foregoing, the undersigned finds that substantial evidence supports the ALJ's evaluation of the testimony of plaintiff's husband. Therefore, this assignment of error should be overruled.

**III. Conclusion**

In sum, substantial evidence supports the ALJ's assessment of plaintiff's mental functioning. Substantial evidence also supports the ALJ's evaluation of the testimony of plaintiff's husband. Accordingly, plaintiff's assignments of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date:  3/29/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

RINA M. WINN,                                         Case No. 1:16-cv-570
    Plaintiff,                                     Barrett, J.
                                                     Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).